UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **VIVIAN D. ELLIS** | * | **CIVIL ACTION NO. 11-2121** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT & RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

Vivian D. Ellis protectively filed the instant application for Title XVI Supplemental Security Income payments on May 4, 2010. (Tr. 117-123, 149).[1] She alleged disability as of December 1, 2008, because of congestive heart failure. (Tr. 129, 142). The claim was denied at the initial stage of the administrative process. (Tr. 69-77, 83-86). Thereafter, Ellis requested and

---

[1] Ellis filed a prior application on December 17, 2008, which was denied by an Administrative Law Judge ("ALJ") on November 12, 2009. (Tr. 53-62). The ALJ determined that Ellis retained the residual functional capacity for light work, reduced by the inability to climb ladders, ropes, or scaffolds, and the need to avoid working around high concentration of fumes. *Id*. On July 28, 2010, the Appeals Council denied Ellis's request for review. (Tr. 66-68). Although Ellis appealed the Commissioner's final decision to this court, she later voluntarily dismissed her case once her attorney determined that Ellis had no viable grounds for appellate relief. *See Ellis v. Astrue*, Civil Action No. 10-1482 (W. D. La.).

received a February 8, 2011, hearing before an ALJ. (Tr. 22-52). However, in a February 22, 2011, written decision, the ALJ determined that Ellis was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to other work that exists in substantial numbers in the national economy. (Tr. 9-18). Ellis appealed the adverse decision to the Appeals Council. On October 5, 2011, however, the Appeals Council denied Ellis's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On December 8, 2011, Ellis sought review before this court. She alleges the following errors:

> (1) the ALJ's residual functional capacity assessment is not supported by substantial evidence because she failed to address plaintiff's testimony that her medication causes her to experience side effects of drowsiness and sleepiness.
>
> (2) the ALJ's step five determination is flawed because it is premised upon vocational expert testimony that is inconsistent with the Dictionary of Occupational Titles.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in

[20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

**I.     Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Ellis did not engage in substantial gainful activity during the relevant period. (Tr. 14). At step two, she found that Ellis suffers severe impairments of pulmonary hypertension; mitral regurgitation with congestive heart failure; status post-mitral valve replacement; and chronic anemia. *Id*. She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id*.

**III.     Residual Functional Capacity**

4

The ALJ next determined that Ellis retains the residual functional capacity ("RFC") to perform sedentary work, except that she can understand, carry out and remember simple, but not complex or detailed instructions, and use judgment to make simple, work-related decisions with few variables. (Tr. 14).[2] Furthermore, she is able to handle changes in a routine, so long as the work setting is not varied. *Id*.

Plaintiff contends that the ALJ's RFC is incomplete because the ALJ failed to consider plaintiff's testimony that she experienced symptoms of dizziness and sleepiness as a result of her Diltiazem medication. (Tr. 43). Indeed, one of the factors relevant to the assessment of the claimant's symptoms is the type, dosage, effectiveness, and side effects of any medication. 20 C.F.R. § 416.929(c)(3).

When assessing the credibility of a claimant's testimony, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in her credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ dutifully documented that she considered plaintiff's statements concerning the effects of her symptoms, but found that they were not credible to the extent that

---

[2] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

5

they were inconsistent with the ALJ's assigned RFC. (Tr. 15). The ALJ further stated that she considered the subjective evidence, including, *inter alia*, Ellis's difficulty with concentrating and completing tasks. (Tr. 17). Although the ALJ ultimately assigned "some weight" to Ellis's testimony, she concluded that it was not consistent with the medical evidence. *Id*. In other words, where the record otherwise conflicted, the ALJ predominantly credited the essentially negative examination findings of the consultative physician, Jennifer Hargett, M.D.[3] The court notes that not only did plaintiff deny to Dr. Hargett that she suffered any symptoms of vertigo, she also denied to other medical providers any symptoms of dizziness, fatigue, and/or malaise, even during periods when she was using Diltiazem. *See e.g.*, Tr. 166, 206, 212, 240. In fact, on the agency-provided Functional Report completed by Ellis on May 11, 2010, she denied any side effects from her various medications which included Diltiazem. (Tr. 140).

In sum, the ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and her resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3,

---

[3] At the behest of the state agency, Ellis underwent a September 11, 2010, consultative examination administered by Dr. Hargett. (Tr. 212-215). At the examination, Ellis stated that she suffered from congestive heart failure. *Id*. Nevertheless, she continued to smoke four cigarettes per day. *Id*. She reported leg pain with exertion, that she alleviates by dangling the leg over the side of the bed. *Id*. She reported drinking 48 ounces of beer per day, but denied illegal drugs. *Id*. She also denied headaches, or **vertigo**. *Id*. She denied any history of anemia. *Id*. She denied sensory loss or dysfunction, depression, nervousness, anxiety, or difficulty concentrating. *Id*. Upon examination, she ambulated, without assistance. *Id*. She also was able to bend and squat, without difficulty. *Id*. She demonstrated a normal range of motion in all joints. *Id*. She was alert and oriented, able to communicate without deficit, and exhibited good insight and cognitive function. *Id*. Hargett diagnosed heart failure, but concluded that Ellis should be able to sit, walk, and/or stand for a full work day, lift/carry objects without limitations, hold a conversation, respond appropriately to questions, and carry out and remember instructions. *Id*.

2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).[4]

## IV.     Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Ellis could not perform her past relevant work. (Tr. 17). Accordingly, she proceeded to step five. At this step, the ALJ determined that plaintiff was a younger individual, with a limited education, and that transferability of skills was immaterial. *Id*. The ALJ observed that given Ellis's vocational factors, and with a residual functional capacity for the full range of sedentary work, the Medical-Vocational Guidelines directed a finding of not disabled. 20 C.F.R. § 416.969; Rule 201.18, Table 1, Appendix 2, Subpart P, Regulations No. 4. (Tr. 17-18). However, because plaintiff's ability to perform sedentary work was reduced by further limitations, the ALJ employed vocational expert testimony to conclude that plaintiff could make an adjustment to other work that exists in substantial numbers in the national economy. *Id*. In response to the ALJ's

---

[4] Plaintiff contends that the court is not permitted to cite to evidence and reasoning not relied upon by the ALJ to support the ALJ's implicit findings. However, the Fifth Circuit has tacitly approved this practice. *See e.g.*, *McKnight v. Astrue*, 340 F. App'x 176, 180-81 (5th Cir. 2009) (unpubl.) (*sua sponte* discounting plaintiff's subjective complaints of side effects from his medication); *Bowie v. Astrue*, 262 F. App'x 642, 645 (5th Cir. 2008) (unpubl.) (ALJ's failure to account for the side effects of plaintiff's medication did not undermine decision, where plaintiff only complained of side effects on SSA forms, but the record contained no other evidence of side effects); and *Jack v. Astrue*, 426 F. App'x 243, 244 (5th Cir. 2011) (unpubl.) (ALJ's implicit determination that plaintiff did not need medication, and thus, did not suffer any resulting side effects, was substantially supported by record evidence indicating that plaintiff no longer took the medication at issue).
  In support of her argument, Ellis relies on *Delaney v. Astrue*, Civil Action No. 11-0572 (W.D. La. June 21, 2012) (R&R) (and cases cited therein). Unlike *Delaney*, however, Ellis's hearing testimony is uniformly rebutted by her own inconsistent statements to medical providers and on agency-provided forms.

hypothetical(s), the vocational expert opined that the claimant could perform representative jobs such as circulation clerk, *Dictionary of Occupational Titles* ("DOT") Code 209.362-010 (97,081 jobs nationwide and 1,282 jobs regionally); credit reference clerk, DOT Code 209.362-018 (16,823 jobs nationwide and 216 jobs regionally); and surveillance systems monitor, DOT Code 379.367-010 (16,566 jobs nationwide and 208 jobs regionally). (Tr. 45-47).

Plaintiff contends that the ALJ's step five determination – premised as it is on vocational expert testimony – is materially flawed because the vocational expert incorrectly characterized the circulation clerk and credit reference clerk positions as unskilled, when according to the DOT, they are semi-skilled jobs. *See* Tr. 45-47. Plaintiff further argues that she cannot make an adjustment to these two jobs because a claimant with an unskilled work history cannot transfer skills to semi-skilled or skilled work. This court, however, has rejected this argument on prior occasion(s), when, as here, the claimant is a younger individual. *See Lincoln v. Astrue*, Civil Action No. 10-1861 (W.D. La.). Moreover, plaintiff's counsel did not cross-examine the vocational expert regarding the alleged discrepancy now raised on appeal.[5] The Fifth Circuit has recognized that

> claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).[6]

---

[5] Albeit, he brought the issue to the attention of the ALJ in a letter that he drafted in the immediate aftermath of the hearing. (Tr. 160-161).

[6] In *Barrett v. Astrue*, the Fifth Circuit cited *Carey* where, as here, the vocational expert incorrectly identified a semi-skilled job as unskilled. *Barratt v. Astrue*, 2008 WL 2325636 (5th Cir. Jun. 6, 2008) (unpubl.). The court noted that the vocational expert's response to the ALJ's hypothetical and plaintiff's testimony provided an adequate basis for the ALJ to rely on the vocational expert's testimony, despite the conflict. *Id*.

In any event, even if the court were to exclude the two clerk positions identified by the vocational expert, the remaining surveillance systems monitor job *is* unskilled, and the incidence of such work constitutes a significant number of jobs within the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).[7] Thus, any error was harmless. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).[8]

Relatedly, plaintiff contends that the ALJ committed reversible error by overlooking her obligation to ascertain from the vocational expert whether his testimony conflicted with the DOT. *See* SSR 00-4p. The court observes in this regard that where the rights of individuals are affected, an agency must follow its own procedures, even where the procedures are more rigorous than otherwise would be required (*e.g.* by case law). *See Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981) (citations omitted). If an agency violates its own rules, with resulting prejudice, then the underlying proceedings are tainted, and any resulting actions cannot stand. *Id.*

---

[7] Plaintiff argues that by itself, the surveillance systems monitor job does not exist in significant numbers in the national economy. However, "work exists in significant numbers in the national economy if it exists in significant numbers in *either* the region where the claimant lives *or* in other regions of the country." *Lirley v. Barnhart*, 124 F. App'x 283 (5th Cir. 2005) (unpubl.) (citing 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566). The incidence of jobs for the surveillance systems monitor position satisfies this disjunctive requirement, whether discounted for part-time jobs, or not. *See Johnson, supra*, and Tr. 160-161.

[8] Plaintiff seems to argue that because the ALJ cited the three representative jobs identified by the vocational expert in her decision, this court cannot simply exclude the two jobs challenged by plaintiff, and, instead, rely on the sole, untainted job of surveillance systems monitor to ratify the ALJ's decision. However, the Fifth Circuit has tacitly approved this practice. *See Zimmerman v. Astrue*, 288 F. App'x 931, 938 (5th Cir. 2008) (unpubl.) (plaintiff's argument lacked merit because even if the court disregarded the availability of the challenged job, the remaining jobs exist in substantial numbers in the national economy).

Nonetheless, "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). Plaintiff has not made the requisite showing here. *See discussion, supra; Barratt, supra* (unpubl.) (remand not required despite ALJ's failure to obtain explanation for any conflicts between the VE's testimony and the DOT).

## Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled. In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was not uniform, and according to plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).[9] That is not to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination

---

[9] Admittedly, this court has expanded upon some of the reasoning provided by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here.

that Jordan was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, in its entirety, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 17th day of January 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE